Dennis HICKMAN, Appellant,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a foreign corporation, Respondent,

Guaranty Residential Lending, Inc., a foreign corporation, Respondent.

No. A03–2042.

Supreme Court of Minnesota.

May 5, 2005.

Patrick J. Neaton, Neaton & Puklich, P.L.L.P., Minnetonka, MN, for Appellant.

Marlene S. Garvis, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for respondent SAFECO Ins. Co.

## OPINION

MEYER, Justice.

The issue in this case is whether appellant Dennis Hickman (Hickman) is a third-party beneficiary of an insurance contract under the "intent to benefit" test. Hickman had a mortgage on his home with respondent Guaranty Residential Lending, Inc. (Guaranty).[1] When Hickman failed to provide proof of insurance as required under the mortgage agreement, Guaranty purchased a fire and windstorm insurance policy from General Insurance Company of America, an affiliate of SAFECO Insurance Company of America (SAFECO).[2] In June 2002, Hickman's home suffered storm damage; he sought and was denied insurance coverage under the fire and windstorm insurance policy issued by SAFECO. Hickman brought suit against SAFECO and Guaranty. The district court granted summary judgment for SAFECO.[3] The court of appeals affirmed the district court's grant of summary judgment concluding that Hickman was not a

---

1. From the complaint it appears Hickman and his wife are co-owners of the home. However, because only Hickman is named on the complaint, for purposes of this opinion we refer only to Hickman.

2. SAFECO initially filed an answer to Hickman's complaint and the SAFECO logo appears on the policy. However, in an amended answer SAFECO asserted that General Insurance Company of America (GICA) issued the insurance policy to Guaranty. The letters sent to Hickman by Guaranty and its predecessor identify GICA as the insurance company. In this opinion, we will refer to SAFECO and GICA collectively as "SAFE-CO."

3. The district court also dismissed the complaint. However, because Guaranty was not included in the motion for summary judgment and the district court did not address Hickman's claim against Guaranty in its memorandum, the court of appeals reversed the dismissal of the complaint and remanded to the district court the issue of Hickman's claim against Guaranty. *Hickman v. SAFECO Ins. Co. of Am.*, No. A03–2042, 2004 WL 1828870, at *5 (Minn.App. Aug. 17, 2004). The court of appeals' reversal of the claim against Guaranty is not before us in this appeal.

third-party beneficiary because he "was not the named insured or listed as an insured under the policy, and payment was made directly to [Guaranty]." *Hickman v. SAFECO Ins. Co. of Am.*, No. A03–2042, 2004 WL 1828870, at *5 (Minn.App. Aug. 17, 2004). Hickman petitioned this court for review of the decision of the court of appeals. We granted review only on the issue of whether Hickman was a third-party beneficiary of the insurance contract under the "intent to benefit" test. We reverse the court of appeals.

In December 1986, Hickman and his wife purchased their home in Watertown, Minnesota. To finance the purchase, Hickman and his wife obtained a first mortgage in the amount of $58,100 from Rothschild Financial Corporation and a second mortgage from the Minnesota Housing Finance Agency. The first mortgage was subsequently assigned to Temple–Inland Mortgage Corporation and then to respondent Guaranty.

Beginning in 1999 or before, Hickman failed to provide proof of insurance as required under the mortgage agreement. Temple–Inland, who then held the mortgage, obtained insurance on the home from SAFECO. The provisions of the insurance contract between Guaranty and SAFECO provide in relevant part:

### Agreement

We will provide the insurance described in this policy in return for the premium and compliance by you and the "borrower" with all applicable provisions of this policy.

### Definitions

Throughout the policy, "you" and "your" refer to the Named Insured Mortgagee shown in the Declarations.

* * * *

"Borrower" means the mortgagor or mortgagors of an "insured location" indebted under a mortgage held or serviced by you. As used in this policy, "borrower" applies to the "insured location" on which the "borrower" is the mortgagor.

* * * *

"Eligible Property" means "residential property" * * * on which you do not have evidence of "fire insurance" protecting your interest as:

1. mortgagee * * *.

* * * *

"Insured Location" means an "eligible property" upon which you have requested insurance in accordance with General Condition 25 * * *.

"Limit of Liability" on an "insured location" is the amount of insurance you request and report to us. The "limit of liability" cannot exceed the greater of:

1. the amount of the indebtedness to you;
2. the amount of expired or canceled "fire insurance" shown in your records.
3. if "residential property", the replacement cost of the building; or
4. if "commercial property", the "actual cash value" * * *.

The policy includes coverage for the "dwelling on the 'insured location,'" "other structures on an 'insured location,'" and "personal property, usual to the occupancy as a dwelling and owned or used by the 'borrower' or members of the 'borrower's' family residing with the 'borrower' while it is on the 'insured location.'" The policy provides that payment for a loss, except losses under personal property coverage, will be paid to Guaranty up to the amount of its interest and "[a]mounts payable in excess of [Guaranty's] interest will be paid to the 'borrower.'" For losses under the

personal property coverage, the policy provides that SAFECO will "adjust all losses with the 'borrower'" and "will pay the 'borrower.'" Under the policy, the "claimant" also has rights in connection with the appraisal of any loss. The term "claimant" is not defined in the contract, but by the terms of the contract includes the borrower, Hickman.

On March 31, 2000, and in the subsequent three years, Temple–Inland and its successor Guaranty sent Hickman written notice informing him that they had obtained insurance on the home.[4] Hickman did not obtain any other insurance coverage on the home.

On June 24, 2002, Hickman's home and the detached storage building on the property were damaged by a windstorm. After the windstorm, FEMA inspected the property and concluded that the house was a total loss. The estimate of damages Hickman obtained from a local contractor, GDS Design and Build, Inc., was $114,048. Aaron Willander of Crawford & Company, SAFECO's insurance adjuster, also inspected the property but concluded that the house was not a total loss. Based on Willander's estimates, SAFECO sent Guaranty $50,981.80 in insurance proceeds—$42,431.80 for the house and $8,550 for the storage building.

By late 2002, the unpaid balance of Hickman's mortgage to Guaranty was less than $43,000. Hickman requested that Guaranty apply the insurance proceeds to the outstanding balance on their mortgage. Guaranty eventually did so and sent Hickman $7,339.08, the balance of the amount it received from SAFECO.

Hickman filed a complaint against SAFECO and Guaranty in March 2003 contending that under the terms of the insurance policy obtained from SAFECO by Guaranty, he was entitled to insurance coverage up to the policy limit for the losses incurred as a result of the storm.[5] On August 26, 2003, SAFECO filed a motion for summary judgment asserting that Hickman failed to prove that he was either a party or a third-party beneficiary to the insurance contract issued to Guaranty by SAFECO. The district court granted SAFECO's motion for summary judgment, concluding that Hickman failed to establish a genuine issue of material fact because he was not a named party to the contract or a third-party beneficiary under either the "duty owed" test or the "intent to benefit"

---

4. The notice stated in part:

In order to protect our mutual interest in the property, we have obtained coverage in accordance with the terms of your Loan Agreement/Mortgage or Deed of Trust. The premium amount for this coverage that we have ordered will be charged to your escrow account. * * *.
PLEASE NOTE THIS IS NOT A HOMEOWNERS POLICY. * * * NO ATTEMPT WAS MADE TO DUPLICATE ANY INSURANCE YOU MAY HAVE HAD IN THE PAST. THE INSURANCE COVERAGE WE HAVE OBTAINED MAY BE MORE EXPENSIVE, MAY NOT BE ENOUGH TO COVER YOUR LOSS AND PROVIDE LESS COVERAGE THAN YOU COULD OBTAIN FROM AN AGENT OR COMPANY OF YOUR CHOICE.

* * * We encourage you to obtain an acceptable replacement policy from an agent or company of your choice.
The notice also indicated that the insurance coverage was obtained in the amount of $85,500 for the house itself, $8,550 for personal property, and $8,550 for "other structures." The $855 premium for this insurance was paid from a real estate tax and insurance escrow account established with funds paid by Hickman with his monthly mortgage payments.

5. The complaint also alleged that Guaranty had failed to apply the amount it received from SAFECO/GICO to the Hickmans' mortgage and failed to satisfy the mortgage. Guaranty subsequently applied the insurance proceeds to the mortgage.

test. The district court also dismissed the complaint against Guaranty.

The court of appeals affirmed summary judgment in favor of SAFECO, concluding that Hickman was not a third-party beneficiary to the contract because he was not listed as an insured under the policy, payment was made directly to Guaranty, and "[n]o evidence in the record indicates that appellant was more than an incidental beneficiary of the contract." *Hickman*, 2004 WL 1828870, at *5. The court of appeals reversed the dismissal of the complaint against Guaranty and remanded for consideration of Hickman's claim because the district court's memorandum did not address it. *Id.* Hickman petitioned this court for review. On October 27, 2004, we granted review solely on the issue of whether Hickman is a third-party beneficiary of the insurance contract under the "intent to benefit" test.

 On review of summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In our review, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954). A motion for summary judgment is granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03.

 The interpretation of insurance contract language is a question of law as applied to the facts presented. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992) (citing *Nat'l City Bank of Minneapolis v. St. Paul Fire &*

*Marine Ins. Co.*, 447 N.W.2d 171, 175 (Minn.1989)). Where the intention of the parties is clear from the face of a contract, construction of the contract is a question of law for the court. *Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). If there is ambiguity, extrinsic evidence may be used, and construction of the contract is a question of fact for the jury unless such evidence is conclusive. *Id.*

 Generally, a stranger to a contract does not have rights under the contract, but an exception exists if a third party is an intended beneficiary of the contract. *N. Nat'l Bank of Bemidji v. N. Minn. Nat'l Bank of Duluth*, 244 Minn. 202, 208, 70 N.W.2d 118, 123 (1955). In *Cretex Companies, Inc. v. Construction Leaders, Inc.*, 342 N.W.2d 135, 139 (Minn. 1984), we adopted the intended beneficiary approach of the Restatement (Second) of Contracts, which states:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary [duty owed test]; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance [intent to benefit test].

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979). Thus, if recognition of third-party beneficiary rights is "appropriate" and either the duty owed test or the intent to benefit test is met, the third party can

recover as an "intended beneficiary."[6] *Id.*; *Cretex*, 342 N.W.2d at 139. If a beneficiary does not meet either of these tests, it is an incidental beneficiary and has no right to enforce the contract. *See Cretex*, 342 N.W.2d at 139. In ascertaining the parties' intent to benefit a third person, the contract is read in light of all the surrounding circumstances.[7] *Id.* at 140.

■ Under the "intent to benefit" test of the Second Restatement, the circumstances must indicate that the promisee (here Guaranty) intends to give the beneficiary (Hickman) the benefit of the promise. Restatement (Second) of Contracts § 302(1)(b). Hickman argues that the circumstances here indicate that Guaranty intended to give him the benefit of the insurance contract, or that at least a fact question exists on this issue. Hickman points to several provisions in the insurance policy to support his status as an intended third-party beneficiary. Specifically, the policy obtained by Guaranty recognizes the class of "borrowers" that is defined as the mortgagor of an insured location indebted under a mortgage to Guaranty. Hickman, while not identified by name in the policy, is recognized as a borrower under the policy terms. The insurance policy provides insurance for up to a total of $102,600—more than the outstanding amount of the mortgage—and states that SAFECO will pay the "greater of" the "amount of indebtedness" or "the replacement cost of the building." Amounts payable in excess of Guaranty's interest "will be paid to the 'borrower.'" In addition, the insurance policy includes $8,550 in coverage for personal property in which Guaranty had no insurable interest. In the case of personal property, the policy provides that SAFECO "will adjust all losses with the 'borrower'" and "will pay the 'borrower.'"[8] The borrower also has

---

6. Prior to *Cretex*, Minnesota followed the test outlined in the First Restatement that distinguished between "donee" and "creditor" beneficiaries. *Cretex*, 342 N.W.2d at 138–39. The Second Restatement eliminated this distinction in favor of a single category of "intended" beneficiaries. Both "donee" and "creditor" beneficiaries are encompassed by the term "intended" beneficiaries. Restatement (Second) of Contracts § 302, reporter's note at 445.

7. Under the Second Restatement, the objective manifestation of intent controls, not the parties' subjective intent. 13 Williston on Contracts § 37:8 at 68–69 (4th ed. 2000); *Pub. Serv. Co. of N.H. v. Hudson Light & Power Dept.*, 938 F.2d 338, 342 (1st Cir.1991); *see also Johnson v. Holmes Tuttle Lincoln–Mercury, Inc.*, 160 Cal.App.2d 290, 325 P.2d 193, 197 (2d Dist.1958) ("The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person.") (citations omitted).

8. These policy provisions illustrate that performance under the policy is rendered, at least in part, directly to Hickman. Therefore, the respondent and the court of appeals, reasoning that Hickman is not a third-party beneficiary because performance is not rendered directly to him under the insurance policy, are factually incorrect. *See Hickman*, 2004 WL 1828870, at *5. In addition, this argument is not legally sound because performance need not be rendered directly to the intended beneficiary. Restatement (Second) of Contracts § 302, cmt. a ("neither promisee nor beneficiary is necessarily the person to whom performance is to be rendered, the person who will receive economic benefit, or the person who furnished the consideration"); *see also Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81, 83 (1981) (stating that "[c]ontracts for the benefit of a third party are enforceable without any requirement that the promisor's performance be rendered directly to the intended beneficiary."); Williston § 37:7 at 55. In *Buchman Plumbing Co. v. Regents of the University of Minnesota*, 298 Minn. 328, 335, 215 N.W.2d 479, 484 (1974), applying the First Restatement test we stated that "if the performance is directly rendered to the promisee, the third party who also may be benefit-

rights under the policy, as a claimant, to seek arbitration of the appraisal of a loss covered by the policy if he disagrees with the amount of loss determined by SAFE-CO. We conclude that these provisions of the insurance contract establish that Guaranty intended to give Hickman the benefit of some of the promised insurance proceeds; therefore, we hold that Hickman is a third-party beneficiary to the contract between Guaranty and SAFECO.

Hickman also urges us to consider some of the surrounding circumstances that further indicate the contracting parties' intent to give Hickman the benefit of the insurance contract. Beginning in March of 2000 and each year thereafter, Guaranty (or its predecessor) provided Hickman with written notice that it had obtained insurance "to protect our mutual interest in the property." In addition, the premiums for the insurance coverage obtained by Guaranty were paid from an escrow account funded by Hickman. Finally, SAFECO paid Guaranty an amount in excess of Guaranty's interest and Guaranty paid that excess to Hickman. These facts certainly support our conclusion that Hickman is an intended third-party beneficiary under the contract, but because we conclude that the language of the contract clearly indicates an intent to benefit Hickman, we do not rely on this extrinsic evidence to reach our holding.

We reverse summary judgment and remand for further proceedings in accordance with this opinion.

Reversed and remanded.

ed is an incidental beneficiary with no right of action," but noted in a footnote that a comment to the first Restatement of Contracts

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.

"suggests that this distinction is not always determinative." *Buchman Plumbing Co.,* 298 Minn. at 335 n. 3, 215 N.W.2d at 484 n. 3.